UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ASHLEY MCLAUGHLIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. 1:21-cv-11846-PBS |
| v. | ) | |
| | ) | |
| CITY OF METHUEN, TRACEY NOONAN, | ) | |
| Detective of the Methuen Police Department, | ) | |
| RICHARD SAWYER, Police Officer of the | ) | |
| Methuen Police Department, ERIC DELEON, | ) | |
| Sergeant of the Methuen Police Department, | ) | |
| JOSE SANTIAGO, Police Officer of the | ) | |
| Methuen Police Department, and | ) | |
| MATTHEW MOREL, Police Officer of the | ) | |
| Methuen Police Department, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Defendants City of Methuen ("Methuen"), Tracey Noonan, Richard Sawyer, Eric Deleon, Jose Santiago and Matthew Morel (collectively "Defendants") have moved the Court to dismiss plaintiff Ashley McLaughlin's ("Plaintiff") Complaint because it does not state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). Plaintiff cannot prevail against any of the police officer defendants, nor should the Court permit Plaintiff to proceed with litigation against them, because each police officer defendant is immune under the qualified immunity doctrine, among other reasons argued in this memorandum. Plaintiff cannot prevail against the governmental defendant because she has not alleged a policy, custom or practice of the municipality which caused any of the police officer defendants to deprive her of any right under federal law, among other reasons. FED. R. CIV. P. 12(b)(2).

The Court should dismiss Counts I, II, IV and V, which purport to allege liability for alleged civil rights violations under federal and state law, because the police officer defendants are immune to the claims asserted in these counts under the doctrine of qualified immunity. Application of qualified immunity is proper and necessary at this early stage of this case because the doctrine of qualified immunity affords both immunity to liability and *immunity to suit*. Moreover, each of these counts of the Complaint must fail for other reasons as stated in Defendants' motion and argued in the present memorandum.

The Court should dismiss Count III, which purports to allege municipal liability under federal law, because Plaintiff has not alleged any actionable deprivation of her rights under federal law that was caused by any established governmental policy, practice or custom of Methuen. Further, Count III does not plead facts sufficient to demonstrate a plausible entitlement to relief against Methuen.

The Court should dismiss Counts VI, VII, VIII, IX, X and XI, which purports to allege liability based on state common law causes of action none pleads facts sufficient to demonstrate a plausible entitlement to relief.

## STATEMENT OF RELEVANT FACTS AND ALLEGATIONS

Plaintiff's Complaint alleges that over the course of six (6) hours or less on Tuesday November 27, 2018, the natural person defendants, all of whom were acting within the scope of their employment as police officers for the Methuen Police Department, falsely arrested and detained Plaintiff for disorderly conduct, and unreasonably searched her person before transporting her to the Lawrence District Court for her first and only court appearance relative to her arrest. A Lawrence District Court judge dismissed the disorderly conduct charge against Plaintiff later the same day and Plaintiff was not taken back into custody. Plaintiff alleges, and Defendants deny,

that Defendants deprived her of federal civil rights, interfered with her state civil rights by means of threats, intimidation or coercion, and are liable to Plaintiff under state common law tort theories.

On November 27, 2018, Methuen Police Detective Tracey Noonan and several other Methuen Police Officers assigned to the department's Narcotics, Gangs, Intelligence and Homeland Security Unit ("Drug Unit"), were conducting surveillance in the center of Methuen. Affidavit of Det. Tracey Noonan, ¶ 6.  The Drug Unit had received complaints from neighborhood residents and business owners of drug activity, and the Drug Unit had made numerous drug related arrests in and around the area of Lawrence Street and the surrounding neighborhoods. Id., ¶ 7.

At approximately 10:00 a.m., Drug Unit officers observed a blue Honda-Civic automobile, bearing Maine license plate #1449TN (hereinafter "Civic"), traveling on Lawrence Street toward the City of Lawrence. Id., ¶ 8.  The license plate for the Civic was registered to an individual having a residential address in Monmouth, Maine, a town approximately two hours driving time distant from Methuen.  To Det. Noonan's knowledge and professional experience, out-of-state drug users frequent the Merrimack Valley area to buy illegal drugs there at costs that are lower than the costs of the same items in their home communities. Id., ¶ 9.  Drug Unit members followed and kept this Civic and its driver under surveillance. Id., ¶ 10.

Det. Noonan saw the female driver of the Civic using her mobile telephone while driving on Lawrence Street. Id.  To Det. Noonan's knowledge and professional experience, drug users often communicate with drug suppliers by mobile telephone shortly before a drug purchase. Id. The driver of the Civic drove on Lawrence Street to Bennington Street and then to Park Street, where she drove into a roadside parking lot, changed direction and then drove to and parked on the street outside ##196-198 Park Street in Lawrence, Massachusetts. Id., ¶ 11.  Drug Unit members knew this location as one from which drugs previously were sold.  Id.

3

Det. Sgt. Deleon and Det. Noonan saw Plaintiff leave the car she had been driving and approach the front door to 98 Park Street on foot.  Id., ¶ 12.  Det. Sgt. Deleon and Det. Noonan saw Plaintiff "looking around in a panicked manner while carrying a bag looped around her torso" as she waited outside 198 Park Street for someone to come to the door. Id.  Det. Sgt. Deleon saw a Hispanic man open the door of 198 Park Street after about 15 seconds of Plaintiff's arrival.  Plaintiff entered and was inside 198 Park Street, out of sight, for approximately three (3) minutes before she left the building and walked directly back to her car. Id.  Plaintiff sat in her car for one or two minutes more before driving out onto Park Street and into Methuen.

Based on the Drug Unit members' training and experience, and observations of Plaintiff, they formed a reasonable suspicion that Plaintiff had traveled from Maine to buy illegal drugs from a dealer within 198 Park Street and did so the morning of November 27, 2018. Id., ¶ 13.  Drug Unit officers followed Plaintiff's vehicle to a McDonald's Restaurant parking lot at 40 Jackson Street, Methuen. Id., ¶ 14.  The police officer defendants' reasonable suspicion supported their stop of Plaintiff.  Plaintiff's conduct at 40 Jackson Street, Methuen caused them to arrest Plaintiff and charge her with disorderly conduct. Id., ¶¶ 15-22.

At 40 Jackson Street, the defendant police officers approached Plaintiff's stopped vehicle's driver's side door on foot and announced orally that they are police officers and displayed their department issued badges. Id., ¶ 15.  Det. Santiago orally ordered Plaintiff to place her hands on the steering wheel where the police officers could see them. Id.  Plaintiff looked at Det. Santiago, paused and then shifted her car into reverse gear. Id., ¶ 16.  Det. Santiago then opened Plaintiff's driver's side door, took control of Plaintiff's hands and escorted her out of her car. Id., ¶ 17.  Outside her vehicle, Plaintiff continually screamed while flailing her arms and legs and refusing orders to calm herself and to stop screaming and flailing. Id., ¶ 18.  Her actions caused persons

present to aggregate and caused traffic to back up in the restaurant's parking lot and drive through lane. Id., ¶__.  Police officers repeatedly ordered Plaintiff to stand by her car and put her hands on her car where they were visible, but Plaintiff failed or refused to do so and continuously reached toward her waistband and groin area, causing the detectives to believe that she was trying to retrieve or destroy an item she had concealed on her person. Id., ¶ 18.  The police officers told Plaintiff that she would be placed under arrest if she did not stop screaming, clenching her fists and attempting to pull away from the police officers. Id., ¶ 20.  Plaintiff's actions prevented Det. Noonan from completing a pat-search of Plaintiff for items potentially dangerous to Plaintiff and the police officers. Id., ¶ 20.   Ultimately, Det. Santiago and Det. Morel lowered Plaintiff to the ground and handcuffed her. Id., ¶ 21.  Plaintiff was informed that she was being arrested and charged with disorderly conduct, and that she would be searched further at the station to prevent contraband from being used or stored in the holding cell. Id., ¶ 22.  Det. Santiago read Plaintiff her Miranda rights and Plaintiff acknowledged her understanding of those rights. Id., ¶ 23.

At the Methuen Police Station, Det. Noonan conducted an unclothed search of Plaintiff that yielded no contraband. Id., ¶ 24.  Plaintiff was fingerprinted, allowed use of a telephone and then put in a holding cell to await the posting of bail. Id.

Plaintiff alleges that she was detained in a holding cell at the Methuen Police Station for one hour. Complaint, ¶ 41.  Plaintiff was transported to transported to Lawrence District Court before 1:00 p.m. that day, Noonan Aff., ¶ 25, where Plaintiff claims that waited in a courthouse holding cell for another hour before seeing a judge. Complaint ¶ 45.  Plaintiff alleges that a judge of the Lawrence District Court dismissed the disorderly conduct charge against her. Id., ¶ 48.  The Complaint alleges no interaction between Plaintiff and Defendants after a judge dismissed the charge at her initial court appearance. See Complaint.

**ARGUMENT**

I.    **THE STANDARD APPLICABLE TO A MOTION TO DISMISS**

    A.    **PLEADING STANDARDS AND REQUIREMENTS UNDER FEDERAL LAW.**

A civil complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a).  A defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  Plaintiff's Complaint does not contain a short and plain statement of a viable claim against the Defendants that demonstrates that she has a plausible entitlement to relief. FED. R. CIV. P. 8(a).

Federal Rule 12(b)(6) permits a party to test the fundamental sufficiency of a complaint or a count of a complaint to state a legally viable claim by moving the Court to dispose promptly of actions or counts that are facially flawed or not legally viable. FED. R. CIV. P. 12(b)(6), *See* Harvard Crimson, Inc. v. President and Fellows of Harvard College, 445 Mass. 745, 748 (2006). To survive a motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 540, 555, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 556). Although only a "short and plain statement of the claim" sufficient to give fair notice of the claim and its factual basis is required, the "plain statement" must "possess enough heft to 'show that the pleader is entitled to relief.'" *See* Fed. R. Civ. P. 8(a)(2); Twombly, 550 U.S. 544, 557 (2007).  "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950.

A court should not strain to find inferences favorable to Plaintiff, and cannot accept conclusory allegations, unwarranted deductions, or legal conclusions. *See* <u>R2 Invs. LDC v. Phillips</u>, 401 F.3d 638, 642 (5th Cir. 2005) (citation omitted).   A complaint must contain "more than labels or conclusions" or "a formulaic recitation of the elements of a cause of action . . ." <u>Twombly</u>, 550 U.S. at 555.  The Court need not accept as true plaintiffs' conclusory allegations. <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1110 (10th Cir. 1991).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 129 S. Ct. at 1949.[1] For the reasons addressed below, the Complaint fails to state a claim against the Defendants.

## B.    GOVERNMENTAL EMPLOYEES ARE IMMUNE TO LIABILITY AND TO SUIT UNDER THE QUALIFIED IMMUNITY DOCTRINE FOR DISCRETIONARY CONDUCT THAT IS OBJECTIVELY REASONABLE.

Each of the defendant Methuen police officers is immune to liability and immune to suit by application of the qualified immunity doctrine.  Qualified immunity provides immunity to governmental employers for their discretionary conduct that is objectively reasonable under clearly established law.  Because reasonable police officers faced with all of the circumstances that the defendant police officers faced with Plaintiff *could have believed* that probable cause existed to arrest, search and detain Plaintiff for several hours pending her initial court appearance later the same day, each of the defendant police officers is immune to Plaintiff's lawsuit and cannot be held liable to Plaintiff for alleged deprivation of a federal right or for interference with a state right by means of threats, intimidation or coercion.

The First Circuit has endorsed a two-step approach for determining whether a complaint adequately states a claim, under which the court "isolate[s] and ignore[s] statements in the

---

[1]    When a complaint fails to "possess enough heft to 'sho[w] that the pleader is entitled to relief . . .'" then "'this basic deficiency should…be exposed at the point of minimum expenditure of time and money by the parties and the court.'" <u>Twombly</u>, 550 U.S. at 557, 558 (internal citations omitted).  A court should insist upon specificity in pleading before allowing disruptive discovery to proceed. <u>Id.</u>

complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements, then take[s] the complaint's well-plead (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor. . .." Justiniano v. Walker, 986 F.3d 11, 19 (1st Cir. 2021); *See* Ashcroft v. Iqbal, 556 U.S. 662, 678-679, 129 S.Ct. 1937 (2009); Parker v. Landry, 935 F.3d 9, 13-14 (1st Cir. 2019).  The determination is fact-specific and requires the court to draw on its judicial experience and common sense. Iqbal, 556 U.S. at 679, 129 S.Ct. 1937. "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." Ocasio–Hernández v. Fortuño–Burset, 640 F.3d 1, 12 (1st Cir. 2011), quoting Iqbal, 129 S.Ct. at 1950. The "make-or-break standard ... is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." Sepúlveda–Villarini v. Dep't. of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010) (Souter, J.).

## II.    PUBLIC EMPLOYEE DEFENDANTS MUST RAISE QUALIFIED IMMUNITY BY MOTION TO DISMISS BECAUSE THE DEFENSE PROVIDES BOTH IMMUNITY TO SUIT AND A DEFENSE TO LIABILITY.

Each of the police officer defendants asserts that he or she is entitled to qualified immunity on all of Plaintiffs' claims.  Qualified immunity confers on public officials *immunity from suit* as well as a defense to liability. Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806 (1985). Qualified immunity ensures that insubstantial claims against government officials will be dismissed before they are burdened with the time, expense and disruption of discovery. Anderson v. Creighton, 483 U.S. 635, 640, n. 2, 107 S.Ct. 3034 (1987). "The basic thrust of the qualified immunity doctrine is to free officials from the concerns of litigation, including 'avoidance of disruptive discovery.'" Iqbal, 129 S.Ct at 1953. Accordingly, the Court must consider and apply the protection of qualified immunity at the earliest possible opportunity. Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534 (1991).

III.   **THE POLICE OFFICER DEFENDANTS ARE IMMUNE TO LIABILITY AND TO SUIT ON COUNTS I, II, IV AND V BY APPLICATION OF THE QUALIFIED IMMUNITY DOCTRINE.**

Defendants Tracey Noonan, Richard Sawyer, Eric Deleon, Jose Santiago and Matthew Morel, all acting under color of state law in the course of their employment as Methuen police officers, are immune to liability because probable cause existed to arrest Plaintiff based on their observation of her behavior before, at and after the time of her arrest, or least arguably existed.

A.   **QUALIFIED IMMUNITY PROTECTS LAW ENFORCEMENT OFFICERS EVEN FOR *ARGUABLY* REASONABLE DISCRETIONARY CONDUCT**.

"Long-standing principles of constitutional litigation entitle public officials to qualified immunity from personal liability arising out of actions taken in the exercise of discretionary functions." Glik v. Cunniffe, 655 F.3d 78, 81 (1st Cir. 2011); *see* Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982).[2]  Qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  Pearson v. Callahan, 555 U.S. 223, 231 (2009).

Courts apply a two-prong analysis to decide questions of qualified immunity. Glik, 655 F.3d at 81; Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009).  These prongs, which may be resolved in any order, Pearson, 555 U.S. at 236, require that the Court decide "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." Glik, 655 F.3d at 81, quoting Maldonado, 568 F.3d at 269.  "Immunity exists even where the abstract 'right' invoked by the plaintiff is well-established, so long as the official could reasonably have

---

[2]   The Massachusetts Supreme Judicial Court has held that MCRA claims are subject to the same standard of qualified immunity for police officers that applies to § 1983 claims. *See* Raiche v. Pietroski, 623 F.3d 30, 40 (1st Cir. 2010) citing Duarte v. Healy, 405 Mass. 43, 46 (1989).

believed 'on the facts' that no violation existed." <u>Dirrane v. Brookline Police Dept.</u>, 315 F.3d 65, 69 (1st Cir. 2002). "[T]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable (state actor) that his conduct was unlawful in the situation he confronted." <u>Saucier v. Katz</u>, 533 U.S. 194, 202 (2001).

A court conducting qualified immunity analysis when probable cause is at issue need not prove the existence of *actual* probable cause for immunity to attach; "*arguable*" probable cause is all that is required. *See* <u>Prokey v. Watkins</u>, 942 F.2d 67, 72 (1st Cir. 1991) (seeking an arrest warrant is objectively reasonable such that immunity attaches so long as probable cause is at least arguable). Immunity extends "so broadly that 'all but the plainly incompetent or those who knowingly violate the law'" are covered. <u>Hegarty v. Somerset County</u>, 53 F.3d 1367, 1373 (1st Cir. 1995) (citations omitted). Dismissal is proper when a court determines that a jury could not find that the defendant's conduct was so deficient that no reasonable officer could have made the same choice. *See* <u>Napier v. Town of Windham</u>, 187 F.3d 177, 183 (1st Cir. 1999). Stated another way, if the presence of probable cause is arguable or subject to legitimate question, qualified immunity protects the involved law enforcement officer.

### B. WHEN APPLIED TO THE CIRCUMSTANCES OF A SEARCH OR SEIZURE LEADING TO AN ARREST, QUALIFIED IMMUNITY APPLIES IF PROBABLE CAUSE EXISTED OR EVEN *ARGUABLY* EXISTED.

Plaintiff's civil rights claims evidently rest on her misunderstanding that the police officer defendants cannot have made a legally permissible arrest nor properly detained her because they ultimately found no illegal drug in her possession. Plaintiff also finds a violation of constitution dimension in the police officers' failure to credit her roadside denial of wrongdoing at the time of her arrest sufficiently to outweigh the probity of their observations of her conduct at 40 Jackson Street, Methuen, and let her go without need for judicial review. Plaintiff evidently contends,

implausibly, that none but a plainly incompetent police officer arguably could have believed that probable cause existed to arrest Plaintiff for disorderly conduct.

"[T]he constitutionality of a warrantless arrest 'depends ... upon whether, at the moment the arrest was made, the officer[ ] had probable cause to make it—whether at that moment the facts and circumstances within [his] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that ... [Plaintiff] had committed or was committing an offense.'" United States v. Figueroa, 818 F.2d 1020, 1023 (1st Cir. 1987) (quoting Beck, 379 U.S. at 91); *See* Goddard v. Kelley, 629 F. Supp. 2d 115, 124 (D. Mass. 2009). "If probable cause exists to arrest, then there has not been a constitutional deprivation" under § 1983 and Defendant is entitled to qualified immunity. Sietins v. Joseph, 238 F. Supp. 2d 366, 375 (D. Mass. 2003).

Plaintiff's arrest for disorderly conduct is based on the defendant police officers' observations of Plaintiff's disorderly and disturbing behavior following an encounter based on the reasonable suspicion that she had purchased illegal drugs.  Probable cause to arrest Plaintiff based on the police officer defendants' observation of her disorderly conduct existed or at least arguably existed, and so the police officer defendants all are immune to suit and to liability.

### C.    THE POLICE OFFICER DEFENDANTS ARE IMMUNE TO LIABILITY AND SUIT ON COUNTS I, II IV AND V.

Plaintiff's complaint seems to misapprehend the basis for Plaintiff's arrest.  Plaintiff was arrested and detained on a charge of disorderly conduct *during the course of her stop and interaction with the defendant police officers* after they had formed a reasonable suspicion that she had purchased illegal drugs.  The arresting officers observed Plaintiff's behavior at 40 Jackson Street and arrested Plaintiff when she refused to desist from behavior that had caused a public disturbance and threatened to harm Plaintiff and the police officers present.  The defendant police

officers had probable cause to arrest Plaintiff for her disorderly behavior, or could, at the very least, conclude that probable cause to arrest Plaintiff was arguably present.

In defining disorderly conduct, Mass. Gen. Laws ch. 272, § 53 provides for the punishment, inter alia, of "idle and disorderly persons." Abraham v. Nagle, 116 F.3d 11, 13-15 (1st Cir. 1997). In 1967, the Supreme Judicial Court rejected a challenge that this provision was unconstitutionally vague by interpreting it to incorporate the Model Penal Code's definition of disorderly conduct. Id., citing Alegata v. Commonwealth, 353 Mass. 287 (1967). That definition states:

> "A person is guilty of disorderly conduct if, with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (a) engages in fighting or threatening, or in violent or tumultuous behavior; or (b) makes unreasonable noise or offensively coarse utterance, gesture or display, or addresses abusive language to any person present, or (c) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor."

Id., quoting ALI, Model Penal Code § 250.2 (Proposed Official Draft 1962).  Several years later, the Supreme Judicial Court struck down subsection (b) of this definition as unconstitutionally overbroad. Abraham, 116 F.3d at 13, citing Commonwealth v. A Juvenile, 368 Mass. 580, (1975). "To avoid First Amendment concerns, the court ruled that the remaining subsections (a) and (c) must be construed to cover only conduct, not activities which involve the 'lawful exercise of a First Amendment right.'" Abraham, 116 F.3d at 14, citing Commonwealth v. A Juvenile, 368 Mass. 580.  However, "the mere fact that the conduct of the defendant was accompanied by speech does not preclude a conviction" under the disorderly conduct law. Abraham, 116 F.3d at 14, citing Commonwealth v. Carson, 10 Mass. App. Ct. 920, 921 (1980).

Plaintiff's continual screaming, flailing and activity caused a crowd of persons to gather outside of the McDonald's restaurant and caused vehicular traffic to back up in the McDonald's parking area and drive through window lane. Noonan Aff., ¶ 18.  Plaintiff's conduct was "tumultuous", disturbing of the public peace, or at the very least was arguably so.  Even without a

gathering crowd and traffic blocked by Plaintiff's response to police activity, "there is a potential for serious violence and of injury both to the suspect and to the police."  Abraham, 116 F.3d at 14.

Massachusetts cases have upheld disorderly conduct arrests where a refusal to obey police orders created a safety threat.  *See* Commonwealth v. Mulero, 38 Mass.App.Ct. 963, review denied, 420 Mass. 110 (1995); Commonwealth v. Bosk, 29 Mass.App.Ct. 904 (1990); Commonwealth v. Carson, 10 Mass.App.Ct. 920 (1980).  As the First Circuit has recognized, "an arrest of a struggling (subject) . . . is a serious business."  Abraham, 116 F.3d at 14.  In the present instance, Plaintiff shifted her car into reverse when ordered by Det. Santiago to turn off her car and put her hands on the steering wheel.  Noonan Aff., ¶ 16.  Plaintiff continued in her physical resistance to the police officers orders after leaving her vehicle by continuing to scream, clench her fists and attempting to pull away from the police officers. Id., ¶ 20.  Plaintiff's conduct prevented Det. Noonan from being able to complete a satisfactory pat-search for items potentially dangerous to Plaintiff and to the police officers. screaming, clenching her fists and attempting to pull away from the police officers. Id.

Defendants had probable cause to arrest Plaintiff and to detain her briefly pending her initial court appearance.  Even if, with the benefit of 20/20 hindsight, a court were to determine that Plaintiff's conduct was not sufficiently "disorderly" to support a conviction, the existence of probable cause to arrest Plaintiff was at least arguable at the time of her arrest.

## IV.    THE COMPLAINT DOES NOT STATE A VIABLE CLAIM UNDER THE MASSACHUSETTS CIVIL RIGHTS ACT BECAUSE IT DOES NOT ALLEGE INTERFERENCE WITH PLAINTIFF'S CIVIL RIGHTS BY MEANS OF THREATS, INTIMIDATION OR COERCION.

Plaintiff does not allege viable claims under the Massachusetts Civil Rights Act, M.G.L. c. 12, § i, because it does not allege that the police officer defendants interfered with Plaintiff's exercise of a federal or state civil right by means of threats, intimidation or coercion.  Plaintiff

alleges only direct action by the police officer defendants in their act of arresting and detaining Plaintiff based on their belief that probable cause existed to arrest and detain her pending her first court appearance.  Because Plaintiff has not alleged facts supporting an essential element of proof for claims under the statute alleged, the Court should dismiss Count IV and V.

To establish liability on an MCRA claim, Plaintiff must prove that her exercise or enjoyment of rights secured by the constitution or laws of either the United States or Massachusetts has been interfered with, or attempted to be interfered with, by threats, intimidation or coercion. See Mass. G.L. c. 12, §§ 11H and 11I.  Bally v. Northeastern Univ., 403 Mass. 713, 717 (1989). "A 'threat' means the 'intentional exertion of pressure to make another fearful or apprehensive of injury or harm.'" Goddard v. Kelley, 629 F.Supp.2d 115, 128 (D.Mass.2009) (quoting Planned Parenthood League of Massachusetts, Inc. v. Blake, 417 Mass. 467, 631 N.E.2d 985 (1994)). "Intimidation" means putting a person in fear for the purpose of compelling or deterring his or her conduct. Id. "Coercion" means application of physical or moral force to another to constrain him to do against his will something he would not otherwise do. Id.

The Supreme Judicial Court ("SJC") has ruled that "[a] direct violation of a person's rights does not by itself involve threats, intimidation, or coercion and thus does not implicate the [MCRA]." Santiago v. Keyes, 890 F.Supp.2d 149, 154 (D. Mass. 2012) quoting Longval v. Comm'r. of Corr. et. al., 404 Mass. 325, 333 (1989). The SJC noted that if, in the context of a direct violation, the officials had "some further purpose in treating [the plaintiff] as they did, threats, intimidation, or coercion might be involved," but that "[c]onduct, even unlawful conduct ... lacks these qualities when all it does is take someone's rights away directly." Id.  Accordingly, the MCRA contemplates a two-part sequence: liability may be found where (1) the defendant threatens, intimidates, or coerces the plaintiff in order to (2) cause the plaintiff to give up something

14

that he has the constitutional right to do. Santiago, 890 F.Supp.2d. at 154.

A majority of reported cases in this district have held that in cases involving wrongful arrests, "the fact of an (alleged) Fourth Amendment violation, standing alone, does not give rise to a claim under the MCRA." Taylor v. Moore, 383 F.Supp.3d 102-03 (D. Mass. 2019); McDonald v. City of Boston, 334 F.Supp.3d 429, 442 (D. Mass. 2018); Ciolino v. Eastman, 128 F.Supp.3d 366, 380-81 (D. Mass. 2015); See Goddard v. Kelley, 629 F.Supp.2d 115, 128-29 (D. Mass. 2009); Santiago v. Keyes, 890 F.Supp.2d 149, 155-56 (D. Mass. 2012); Turkowitz v. Town of Provincetown, 914 F.Supp.2d 62, 76 (D. Mass. 2012); Lund v. Henderson, 22 F.Supp.3d 94, 106-07(D. Mass. 2014); But see Nuon v. City of Lowell, 768 F.Supp.2d 323, 335 n. 8 (D. Mass. 2011) (an arrest without probable cause establishes liability under the MCRA because it constitutes both a constitutional violation and coercion). In the present case, Plaintiff alleges that her arrest constituted an interference with her civil right to be free of an unreasonable search and seizure. In doing so, Plaintiff "wrongfully attempts to graft one act onto two distinct burdens." Santiago, 890 F.Supp.2d at 157. She does not allege with particularity any secondary purpose that her arrest and detention were effected to accomplish, and so has alleged only direct action. Accordingly, Plaintiff has not stated a viable basis for recovery of damages under the Massachusetts Civil Rights Act.

## V.    PLAINTIFF HAS NOT PLED A VIABLE CLAIM AGAINST METHUEN UNDER 42 U.S.C., § 1983 IN COUNT III OF THE COMPLAINT.

A plaintiff may bring a § 1983 claim against a municipal entity "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" on the plaintiff. Taylor, 383 F.Supp.3d 103-04 quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S.Ct. 2018 (1978). To succeed, the plaintiff must show that "there is a direct causal link between a municipal policy

or custom and the alleged constitutional deprivation." <u>Taylor</u>, 383 F.Supp.3d 103-04 quoting <u>City of Canton v. Harris</u>, 489 U.S. 378, 385, 109 S.Ct. 1197 (1989).

A claim based on a municipality's alleged failure to train "can be actionable where 'the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact' and where 'the identified deficiency in a city's training program [is] closely related to the ultimate injury.'" <u>Taylor</u>, 383 F.Supp.3d 103-04 quoting <u>Young v. City of Providence ex rel. Napolitano</u>, 404 F.3d 4, 26 (1st Cir. 2005) (alteration in original) quoting <u>City of Canton</u>, 489 U.S. at 388, 391, 109 S.Ct. 1197.  Plaintiff does not identify a deficiency in Methuen's training program, makes boilerplate allegations that the Court need not consider in evaluating the sufficiency of Count III.  There is no allegation of fact in the Complaint that suggests that Plaintiff can prove Methuen's training of police officers is deliberately indifferent to its citizen's rights.

The Court need not and should not consider Plaintiff's conclusory assertion that Methuen failed to properly discipline its officers and that its alleged failure is closely related to harm suffered by Plaintiff.  Plaintiff alleges no facts in the Complaint that can provide factual support for Plaintiff's self-serving suppositions concerning the effect that a baldly-asserted lack of discipline may have had on the defendant police officers at the time of Plaintiff's arrest.

Count III does not demonstrate that Plaintiff has a plausible entitlement to relief from Methuen for alleged violation of §1983.  Accordingly, the Court should dismiss Count III.

## VI.   PLAINTIFF HAS NOT PLED A VIABLE CLAIM BASED ON FALSE IMPRISONMENT IN COUNT VI OF THE COMPLAINT.

To be liable for false imprisonment, Plaintiff must show, *inter alia*, that she was unlawfully confined, either directly or indirectly.  <u>Finamore v. Miglionico</u>, 15 F. 4th 52, 61 (1st Cir. 2021).  "Ordinarily, a police officer may be held liable for false imprisonment 'unless the ... officer had a legal justification' for the restraint.'" <u>Finamore</u>, 15 F. 4th at 61; quoting <u>Barbosa v. Conlon</u>, 962

F. Supp. 2d 316, 334 (D. Mass. 2013) quoting <u>Sietins v. Joseph</u>, 238 F. Supp. 2d 366, 381 (D. Mass. 2003). "Such justification exists if the officer had probable cause to arrest the suspect." <u>Finamore</u>, 15 F. 4th at 61 quoting <u>Sietins</u>, 238 F. Supp. 2d at 381. Because the defendants had probable cause to arrest Plaintiff for disorderly conduct, "it follows inexorably . . . that the Officers were legally justified in placing (Plaintiff) under arrest and confining (her) while they prepared a criminal complaint." <u>Finamore</u>, 15 F. 4th at 61.

The presence or arguable presence of probable cause to arrest Plaintiff for false arrest defeats the false arrest/false imprisonment claim under federal and state law. *See* <u>Abraham</u>, 116 F.3d at 14. Because the defendants had probable cause to arrest Plaintiff for her disorderly conduct, Plaintiff cannot prevail on Count VI alleging false imprisonment.

## VII.   PLAINTIFF HAS NOT PLED A VIABLE CLAIM BASED ON ASSAULT AND BATTERY IN COUNT VII OF THE COMPLAINT.

Assault and battery is the "intentional and unjustified use of force upon the person of another, however slight, or the intentional doing of a wanton or grossly negligent act causing personal injury to another." <u>Goddard</u>, 629 F. Supp. 2d at 129. Massachusetts law allows an officer to use reasonable force in conducting a lawful arrest or seizure: reasonable force is a valid defense to assault and battery. <u>Raiche v. Petroski</u>, 623 F.2d 30, 40 (2010).

Plaintiff has not alleged a valid claim of assault and battery nor alleged injury as a result of an unauthorized touching, and so has not demonstrated a plausible entitlement to relief on a state common law assault and battery theory. The only allegations made by the Plaintiff of physical contact with the defendant police officers concern her removal from her vehicle and application of handcuffs. As Plaintiff resisted the defendant officer's demand that she place her hands on her steering wheel and then on her car, force was necessary to apply handcuffs. Plaintiff has not alleged harm because of the alleged battery and so has not alleged a viable claim.

## VIII.   PLAINTIFF HAS NOT PLED A VIABLE CLAIM BASED ON MALICIOUS PROSECUTION IN COUNT VIII OF THE COMPLAINT.

Malicious prosecution under Massachusetts common law is an "interference with the right to be free from unjustifiable litigation." Chervin v. Travelers Ins. Co., 448 Mass. 95, 102 (2006); Foley v. Polaroid Corp., 381 Mass. 545, 552 (1980).  To prevail on a malicious prosecution claim under Massachusetts law, Plaintiff must prove that the defendant police officers (i) instituted criminal proceedings (ii) with malice and (iii) without probable cause, and (iv) that the proceedings were terminated in the [appellant]'s favor." Limone v. United States, 579 F.3d 79, 89 (1st Cir. 2009); Parker v. Town of Swansea, 270 F.Supp.2d 92, 103 (2003); see Correllas v. Viveiros, 410 Mass. 314, (1991).  A claim of malicious prosecution cannot stand where there was probable cause for the arrest. Gutierrez v. Mass. Bay Transp. Auth., 437 Mass. 396, 405–06 (2002). Plaintiff alleges that the police officer defendants arrested her November 27, 2018, detained her for part of one day and transported her to court for arraignment that same day. *See* Complaint.

Under Massachusetts law, when a police officer makes an arrest without a warrant, a clerk-magistrate determines whether a criminal complaint will issue on probable cause.  In Re Powers, 465 Mass. 63, 66 (2013); *See* District Attorney for the Norfolk Dist. v. Quincy Div. of the Dist. Court Dep't, 444 Mass. 176, 185–186 (2005).  Massachusetts Rules of Criminal Procedure, Rule 3.1 provides, in relevant part, "No person shall be held in custody more than twenty-four hours following an arrest, absent exigent circumstances, unless . . . (iii) a determination of probable cause for detention has been made pursuant to subsection (b)" of the rule. Mass.R.Crim.P. 3.1(a). Massachusetts Rule 3.1 further provides that "a determination of probable cause for detention shall be made by an appropriate judicial officer (who) . . . shall consider any information presented by the police, whether or not known at the time of arrest . . . under oath or affirmation, or under the pains and penalties of perjury.  Mass. R. Crim. P. 3.1(b).  Though Plaintiff's Complaint does not

18

say much about the post-arrest due process she received, her arrest late morning and transportation to Lawrence District Court early that afternoon for her arraignment indicate that Plaintiff's interaction with the police officer defendants and with the Lawrence District Court spanned less than twenty-four (24) hours and perhaps fewer than six (6) hours.

There is no factual allegation in the Complaint that can support Plaintiff's claim of malicious prosecution. The "prosecution" at issue evidently consists of the transportation and presentation of the Plaintiff to Court for an initial hearing within several hours of her arrest, and no more. Plaintiff has not demonstrated a plausible entitlement to relief on this theory and the Court should dismiss Count VIII.

## IX.   PLAINTIFF HAS NOT PLED A VIABLE CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS IN COUNT IX.

To state a claim for intentional infliction of emotional distress, Plaintiff must plead and prove that that the defendants, "by extreme and outrageous conduct and without privilege," subjected her to "severe emotional distress." Limone, 579 F.3d at 91 quoting Agis v. Howard Johnson Co., 371 Mass. 140, 144-45 (1976). Conduct supporting a claim must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and intolerable in a civilized community." Mello v. Stop & Shop, 402 Mass. 555, 562-63 (1988); Foley v. Polaroid Corp., 400 Mass. 82, 99 (1987). Liability cannot be predicated upon:

> "Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities," nor is it enough "that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort; rather, liability has been found only where the conduct has been found so outrageous in character, and so extreme in degree as to go beyond all bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community."

Foley, 400 Mass. at 99; see Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996).  Conduct sufficiently base to support a claim for intentional infliction of emotional distress must be "profoundly shocking."  Conway v. Smerling, 37 Mass. App. Ct. 1, 8 (1994).

The Complaint does not allege extreme and outrageous conduct intended by the police officer defendants to cause Plaintiff severe emotional distress.  The Plaintiff was arrested in response to her conduct that caused a public disturbance and threatened injury to Plaintiff and the police officers she encountered, and that Plaintiff's involvement with the defendants and the Court system lasted well less than a full day.  Plaintiff has not alleged conduct by any of the police officer defendants that can reasonably be called "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and intolerable in a civilized community."  Mello, 402 Mass. at 562-63.  Count IX is an example of excessive over pleading, which the Court should dismiss.  Because there is no allegation of "profoundly shocking" conduct nor extreme emotional distress, the police officer defendants are entitled to judgment of dismissal on Count IX.

## X.   PLAINTIFF HAS NOT PLED A VIABLE CLAIMS FOR NEGLIGENCE IN COUNTS X AND XI.

The Complaint does not state a viable claim against Methuen based on common law negligence.  The Complaint has not plausibly alleged that any of the police officer defendants breached a duty of reasonable care owned to Plaintiff resulting in compensable harm. Accordingly, the Court should dismiss Counts X and XI of the Complaint.

## CONCLUSION

For all the above stated reasons, the Court should dismiss all counts of Plaintiff's Complaint against all Defendants because none states a claim upon which relief can be granted.

Respectfully submitted,

The Defendants**,**

CITY OF METHUEN, TRACEY NOONAN,
RICHARD SAWYER, ERIC DELEON,
JOSE SANTIAGO, and MATTHEW MOREL,

By their attorneys,

/s/ William P. Breen, Jr.
William P. Breen, Jr., BBO #558768
Eckert Seamans Cherin & Mellott, LLC
Two International Place, 16th Floor
Boston, MA 02110
(617) 342-6800
(617) 342-6899 (facsimile)
wbreen@eckertseamans.com

Dated:  February 23. 2022

## **CERTIFICATION OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 23, 2022.

/s/ William P. Breen, Jr.